UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,                    :
                                               :
                    Plaintiff,                 :
                                               :
vs.                                            :   Case No. 4:19-cv-02735
                                               :
HOA RESTAURANT HOLDER, LLC,                    :
a Delaware limited liability company,          :
                                               :
                    Defendant.                 :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, HOA RESTAURANT HOLDER, LLC, a Delaware limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, Hooters, has an address of 11835 Lackland Road, St. Louis, Missouri 63146, located in the City and County of St. Louis ("Hooters").

3.      Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.     Defendant owns, leases, leases to, or operates a place of public accommodation, Hooters, as defined by the ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.     Hooters is a place of public accommodation.

7.     Defendant is responsible for complying with the obligations of the ADA.

8.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

9.     Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

10.     Plaintiff Fred Nekouee has visited the St. Louis area near Hooters in June 2015, June 2016, September 2017, December 2017, March 2018, July 2018, September 2018, January 2019, May 2019, and September 2019.

11.     Fred Nekouee has visited, bought food and drinks, and sought to avail himself of the services at Hooters which forms the basis of this lawsuit on September 23, 2018; May 15, 2019; and September 15, 2019.

12.     Fred Nekouee plans to return to the property to avail himself of the food, drinks and services offered to the public at Hooters since it is close to the heavy equipment dealerships he visits in the St. Louis area and to the hotels he stays at in the area such as the Red Roof Inn at 11837 Lackland Road, St. Louis, Missouri 63146.

13.     Fred Nekouee has definite plans to return to the St. Louis area in December 2019 or January 2020.

14.     The Plaintiff, Mr. Nekouee, likes to eat at moderately-priced restaurants with fast service like Hooters near the heavy equipment dealerships he visits and the hotels he stays at in the area.

15.     For the reasons set forth in paragraphs 9 through 14 and 24 of this Complaint, Mr. Nekouee plans to return to Hooters.

16.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and walking surfaces, and have impaired his use of restrooms in Hooters.

17.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20.     On his visit to the Hooters, the Plaintiff encountered excessively steep running slopes in its parking lot and access aisles.

21.     The Plaintiff encountered barriers to access in the men's restroom in Hooters; and so, he tried to sue the women's restroom in Hooters, in which women's restroom he also encountered and observed barriers to access.

3

22.     The Plaintiff is deterred from visiting Hooters, even though Hooters is close to the heavy equipment dealerships he visits in the area and the hotels he stays at in the area, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 29 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

24.     Fred Nekouee desires to visit Hooters not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

25.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

26.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

27.     Preliminary inspections of Hooters show that violations exist.

28.     Physical conditions that exist at the Property are accurately described in each subsection designated with a romanette "(i)" in each lettered subparagraph of paragraph 29 below.

29.     The violations that Fred Nekouee personally encountered or observed at Hooters

on his visits there, include, but are not limited to:

**PARKING AREA**

a.   (i) In the parking lot, there is no signage with the words "van accessible." (ii) In the parking lot, none of the parking spaces for disabled patrons has van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) Due to the lack of van accessible signage, it was difficult for the Plaintiff to find a place to park.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the front section of the parking space (closer to the building) for disabled patrons shown in the photograph below is not even and has a cross slope that is steeper than 1:48 and steeper than 3.1%.   (ii) The front section of this parking space for disabled patrons is not even and has a cross slope that is steeper than 1:48 and steeper than 3.5%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The cross slope in this parking space made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



c.    (i) In the parking lot, the front section (closer to the building) of the parking space for disabled patrons shown in the photograph below is not even and has a cross slope that is steeper than 1:48 and steeper than 3.1%.   (ii) The front section of this parking space for disabled patrons is not even and has a cross slope that is steeper than 1:48 and steeper than 7.0%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The cross slope in this parking space made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



d.   (i) In the parking lot, the front section (closer to the building) of the access aisle shown in the photograph below is not even and has areas with a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) The front section (closer to the building) of this access aisle is not even and has areas with a cross slope steeper than 1:48 and as steep as 1:16.4 (6.1%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered steep cross slopes in this access aisle while moving in his wheelchair, and the steep slopes made his wheelchair unstable.   (iv) The action required to level this access aisle and to reduce the cross slopes in this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) In the parking lot, an area just to the left of the entrance ramp as one faces the entrance has a change in level greater than 0.5 inches.   (ii) In the area shown in the photograph below, an area just to the left of the entrance ramp as one faces the entrance, has a change of level greater than 0.5 inches and as great as about 3 inches creating a barrier to access the entrance for mobility impaired individuals who are not able to park in the two parking spaces for disabled patrons or who have difficulty moving in a wheelchair along the accessible route from these parking spaces to the entrance; in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) The Plaintiff encountered this change of level while moving in his wheelchair, and he had to take a different path to the entrance to avoid it.   (iv) The action required to fill this pot hole is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) The walking surface near the corner of the building along the accessible route to the entrance from the parking spaces for disabled patrons has a running slope greater than 1:20 (5%) and steeper than 7%.   (ii) The walking surface near the corner of the building along the accessible route to the entrance from the parking spaces for disabled patrons has a running slope greater than 1:20 (5%) and steeper than 7%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep running slope while moving in his wheelchair along the accessible route to the entrance from the parking spaces for disabled patrons, and it made his wheelchair unstable and difficult to control.   (iv) The action required to reduce the running slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The walking surface near the corner of the building along the accessible route

to the entrance from the parking spaces for disabled patrons has a cross slope greater than 1:48 and steeper than 3.1%.   (ii) The walking surface near the corner of the building along the accessible route to the entrance from the parking spaces for disabled patrons has a cross slope greater than 1:48 and as steep as about 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep cross slope while moving in his wheelchair along the accessible route to the entrance from the parking spaces for disabled patrons, and it made his wheelchair unstable and difficult to control.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

h.      (i) The running slope of the walking surface near the main entrance door is steeper than 1:20 (5%) and steeper than 6%.   (ii) The running slope of the walking surface near the main entrance door is steeper than 1:20 (5%) and as steep as about 11%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep running slope near this entrance and it made his wheelchair unstable and very difficult to control.   (iv) The action required to reduce the running slope of the walking surface near the main entrance is easily accomplishable and able to be carried out without much difficulty or expense.

i.      (i) The cross slope of the walking surface along the accessible route from the parking spaces for disabled patrons and on the same side of the building as the parking spaces for disabled patrons is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface is steeper than 1:48 and as steep as about 1:22.7 (4.4%), in violation of Federal Law 2010, ADAAG 403.3.   (iii) The Plaintiff encountered this steep cross slope on this walking surface while moving in his wheelchair, and it made his wheelchair

unstable.   (iv) The action require to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

    j.   (i) The cross slope of the walking surface along the accessible route from the parking spaces for disabled patrons on the same side of the building as the main entrance is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface is steeper than 1:48 and as steep as about 1:18.9 (5.3%) near the corner of the building and as steep as about 1:25.6 (3.9%) near the entrance door, in violation of Federal Law 2010, ADAAG 403.3.   (iii) The Plaintiff encountered these steep cross slopes of this walking surface while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action require to reduce the cross slopes of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

    k.   (i) The slope of the surface within 60 inches of the main entrance door is steeper than 1:48 and steeper than 3.1%.   (ii) The slope of the surface within the entrance door required maneuvering space of 60 inches is steeper than 1:48 and steeper than about 7%, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) Due to the steep slope within this maneuvering space, the Plaintiff's wheelchair slipped sideways, and he required assistance to enter Hooters.   (iv) The action required to reduce the slope within this entrance door maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

    l.   (i) The curb ramp shown in the photograph in subparagraph (c) above projects into the parking access aisle.   (ii) This curb ramp projects into the parking access aisle, in violation of Federal Law 2010, ADAAG § 406.5.   (iii) The Plaintiff used this curb ramp in this access aisle while moving in his wheelchair, and it made his wheelchair unstable

and it put him in danger.  (iv) The action required to relocate this curb ramp is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOORS**

m.   (i) The force needed to open the exterior entrance door is more than 5 pounds.   (ii) The force needed to open the exterior entrance door is about 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   At the times Plaintiff entered Hooters, there was no assistance from the restaurant staff to open this entrance door.   (iv) The action required to adjust the closing force of this exterior entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) The force needed to open the interior entrance door to the restaurant from the lobby area is more than 5 pounds.   (ii) The force needed to open this interior entrance door is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   At the times Plaintiff entered Hooters, there was no assistance from the restaurant staff to open this entrance door.   (iv) The action required to adjust the closing force of this interior entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) The time for the restaurant door inside the lobby to close from an open position

of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the restaurant door inside the lobby to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short amount of time for this door to close from an open position, the door closed on the Plaintiff's wheelchair before he could move all of the way through the door.   (iv) The action required to adjust the door closer on this door is easily accomplishable and able to be carried out without much difficulty or expense.

**BACK SECTION OF RESTAURANT**

p.   (i) In the back section of the restaurant, the side of the ramp shown in the photograph below has a slope steeper than 1:10 (10%) and steeper than 11%. (ii) The side of this ramp has a slope steeper than 1:10 (10%) and as steep as about 18%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered this side of this ramp, and it caused his wheelchair to become unstable and slip sideways.



**MEN'S RESTROOM**

q.    (i) The force needed to open the door to the men's restroom is more than 5 pounds.
(ii) The force needed to open the door to the men's restroom is about 15 pounds, which
force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the
continuous application of force necessary to fully open a door, in violation of Federal Law
2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff
required assistance in his wheelchair to open this door.   (iv) The action required to adjust
the closing force of this door is easily accomplishable and able to be carried out without
much difficulty or expense.

r.    (i) The time for the door to the men's restroom to close from an open position of
90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the door
to the men's restroom to close from an open position of 90 degrees to 12 degrees from the

latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short amount of time for this door to close from an open position, the door closed on the Plaintiff's wheelchair before he could make it all of the way through the door.   (iv) The action required to adjust the door closer on this door is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) The entrance to the men's restroom does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the men's restroom does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility.   (iv) The action required to install signage with at the entrance to the men's restroom with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) The men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) As shown in the photograph below, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 10 inches and less than 18 inches since it is blocked by a wall-mounted paper towel dispenser, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the location of the wall-mounted paper towel dispenser parallel to the doorway, the Plaintiff had difficulty trying to open this door to exit the men's restroom, and he required assistance to exit the men's restroom.   (iv) The action required to increase this pull side maneuvering clearance by relocating the paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



u.    (i) In the men's restroom, the accessible toilet compartment door does not have a door pull on both sides of the door near the latch.   (ii) This accessible toilet compartment door does not have a door pull on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) The Plaintiff had difficulty opening and closing the door to the toilet compartment due to the lack of a door pull on both sides of the door.   (iv) The action required to install door pulls on both sides of this door is easily accomplishable and able to be carried out without much difficulty or expense.

v.    (i) In the men's restroom, the operation of the door latch to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the door latch to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7. (iii) The Plaintiff could not operate this latch with a closed fist or loose grip, and so he could not lock the door to the accessible toilet compartment.   (iv) The action required to

replace this latch is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) As shown in the photograph below, the accessible toilet compartment in the men's restroom does not have a rear wall grab bar.   (ii)   The accessible toilet compartment in the men's restroom does not have a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) Due to the lack of a rear wall grab bar in the accessible toilet compartment, the Plaintiff required assistance to transfer himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



x.   (i) In the men's restroom, the leading edge of the wall-mounted hand dryer protrudes more than 4 inches from the wall and is located between 27 and 80 inches above

the floor.   (ii) The leading edge of this wall-mounted hand dryer protrudes horizontally from the wall about 9 inches and more than 4 inches from the wall and is located between 27 and 80 inches above the finish floor in the circulation path, in violation of Federal Law 2010, ADAAG § 307.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this hand dryer and had to maneuver to avoid hitting his head.   (iv) The action required to relocate this hand dryer is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the men's restroom, the centerline of the toilet paper dispenser outlet is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of the toilet paper dispenser outlet is about 13 inches from the front of the water closet or toilet and not between 7 and 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser from the front of the toilet, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the men's restroom, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between 16 and 18 inches, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) The location of the toilet made it difficult for the Plaintiff to use the side wall grab bar and even more difficult to reach the toilet paper.   (iv) The action required to reduce the space between the toilet and the sidewall is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the men's restroom, the bottom edge of the mirror's reflecting surface is

18

higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is about 44 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG   603.3.   (iii) Due to the height of the bottom of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the men's restroom, the toilet's flush control is not mounted on the open and wide side of the clear floor space.   (ii) As shown in the photograph in subparagraph (w) above, the flush control is not mounted on the open and wide side of the clear floor space of this toilet, in violation of Federal Law 2010, ADAAG   604.6.   (iii) Due to the location of this flush control, the Plaintiff could not flush this toilet from his wheelchair. (iv) The action required to replace or move this flush control is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM**

cc.   (i) The entrance to the women's restroom does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the women's restroom does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and it deters him from visiting Hooters.   (iv) The action required to install signage with at the entrance to the women's restroom with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) The force needed to open the door to the women's restroom is more than 5

pounds.   (ii) The force needed to open the door to the women's restroom is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this door is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the women's restroom, the accessible toilet compartment door does not have a door pull on both sides of the door near the latch.   (ii) This accessible toilet compartment door does not have a door pull on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) The Plaintiff observed the lack of a door pull on both sides of this door, and it deters him from visiting Hooters.   (iv) The action required to install door pulls on both sides of this door is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) The accessible toilet compartment in the women's restroom does not have a rear wall grab bar.   (ii)   The accessible toilet compartment in the women's restroom does not have a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) The Plaintiff observed the lack of a rear wall grab bar in this accessible toilet compartment. (iv) The action required to install a rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the accessible toilet compartment of the women's restroom, the side wall grab bar is less than 42 inches long.   (ii) This side wall grab bar is about 36 inches long and less than the minimum required length of 42 inches, in violation of Federal Law 2010,

ADAAG   604.5.1.   (iii) The Plaintiff observed this short side wall grab bar, and it deters him from visiting Hooters.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the accessible toilet compartment of the women's restroom, the side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall.   (ii) This side wall grab bar only extends about 49 inches from the rear wall and not a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAAG § 604.5.1.    (iii) The Plaintiff observed the position and length of this side wall grab bar, and it deters him from visiting Hooters.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) The counter surface of the sinks in the women's restroom is higher than 34 inches above the floor.   (ii) The counter surface in the women's restroom is about 36 inches above the finish floor and higher than 34 inches above the finish, in violation of Federal Law 2010, ADAAG § 606.3.   (iii) Due to the height of the counter surface for the sink, the Plaintiff had difficulty using this sink.   (iv) The action required to lower the counter surface of the sinks in the women's restroom is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the women's restroom, the toilet's flush control is not mounted on the open and wide side of the clear floor space.   (ii) The flush control is not mounted on the open and wide side of the clear floor space of this toilet, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) The Plaintiff observed the location of this flush control on this toilet, and it deters him from visiting Hooters.   (iv) The action required to replace or move this flush control is easily accomplishable and able to be carried out without much

difficulty or expense.

kk.    (i) In the women's restroom, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is as high as about 60 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. (iii) The Plaintiff observed the height of this coat hook, outside of his reach range from his wheelchair, and it deters him from visiting Hooters.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

ll.    (i) In the women's restroom, the centerline of the toilet paper dispenser outlet is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of the toilet paper dispenser outlet is about 12 inches from the front of the water closet or toilet and not between 7 and 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) The Plaintiff observed the location of this toilet paper dispenser from the front of the toilet, and it deters him from visiting Hooters.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

mm.       (i) In the women's restroom, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between 16 and 18 inches, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) The Plaintiff observed the location of the toilet, and it deters him from visiting Hooters.   (iv) The action required to reduce the space between the toilet and the sidewall is easily accomplishable and able to be carried out without much difficulty or expense.

30.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

31.     The discriminatory violations described in paragraph 29 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

32.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

33.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

34.      Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

35.   Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

36.   Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

37.   Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

38.   Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

39.   Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant

Plaintiff Injunctive Relief, including an order to require the Defendant to alter Hooters and adjacent parking lot spaces, access aisles, walkways, back room, and restrooms to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility, Hooters, until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

                              Respectfully submitted,

                              s/Robert J. Vincze
                              Robert J. Vincze (MO #37687)
                              Law Offices of Robert J. Vincze
                              PO Box 792
                              Andover, Kansas 67002
                              Phone: 303-204-8207
                              Email: vinczelaw@att.net

                              *Attorney for Plaintiff Fred Nekouee*